# Illinois Official Reports

## Appellate Court

---

*Meridian Village Ass'n v. Hamer*, 2014 IL App (5th) 130078

---

| | |
|---|---|
| Appellate Court Caption | MERIDIAN VILLAGE ASSOCIATION and MERIDIAN VILLAGE ASSOCIATION II, Plaintiffs-Appellants, v. BRIAN A. HAMER, Director of Revenue, THE DEPARTMENT OF REVENUE, MADISON COUNTY BOARD OF REVIEW, EDWARDSVILLE COMMUNITY UNIT SCHOOL DISTRICT NO. 7, and THE VILLAGE OF GLEN CARBON, Defendants-Appellees. |
| District & No. | Fifth District<br>Docket No. 5-13-0078 |
| Filed | March 28, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Department of Revenue's denial of plaintiffs' application for property tax exemptions based on the charitable and religious uses of their senior housing facility was affirmed, since plaintiffs failed to meet the guidelines set out in *Methodist Old Peoples Home*, they did not establish that their funds came from public and private charity, obstacles were placed in the way of those seeking charity from plaintiffs, and plaintiffs did not show that the primary use of the property was for charity. |
| Decision Under Review | Appeal from the Circuit Court of Madison County, No. 09-MR-340; the Hon. Barbara L. Crowder, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Edward T. McCarthy, of McCarthy & Allen, of Edwardsville, for appellants.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Timothy K. McPike, Assistant Attorney General, of counsel), for appellees Brian A. Hamer and Department of Revenue.

Ellen M. Edmonds, of Edmonds Law Office, P.C., and Jack H. Humes, Jr., of Sivia Business & Legal Services, P.C., both of Edwardsville, for appellee Edwardsville Community Unit School District No. 7.

Terry I. Bruckert, of Bruckert, Gruenke & Long, P.C., of O'Fallon, for appellee Village of Glen Carbon.

Panel

PRESIDING JUSTICE WELCH delivered the judgment of the court, with opinion.
Justices Goldenhersh and Cates concurred in the judgment and opinion.

**OPINION**

¶ 1     This is an appeal from administrative review by the circuit court of Madison County of a decision of the Illinois Department of Revenue (the Department) denying the application of Meridian Village Association and Meridian Village Association II (the appellants) for property tax exemptions based on charitable and religious uses of the property for tax years 2003 through 2006. Edwardsville Community Unit School District No. 7 and the Village of Glen Carbon intervened to oppose the appellants' application for an exemption. On January 24, 2013, the circuit court entered an order affirming the decision of the Department. It now comes before us on further review pursuant to the Administrative Review Law (735 ILCS 5/3-101 to 3-113 (West 2012)).

¶ 2     As always in matters of administrative review, we review the decision of the Department rather than the decision of the circuit court. See *Three Angels Broadcasting Network, Inc. v. Department of Revenue*, 381 Ill. App. 3d 679, 692 (2008). The amount of deference given to the agency on review depends on whether the issue presented is a question of fact, a question of law, or a mixed question of law and fact. *Three Angels Broadcasting Network, Inc.*, 381 Ill. App. 3d at 693. Where the resolution of the case requires determining the legal effect of a given set of facts, the agency's determination should be affirmed unless clearly erroneous.

- 2 -

*Three Angels Broadcasting Network, Inc.*, 381 Ill. App. 3d at 693. As was the case in *Three Angels Broadcasting Network, Inc.*, the determinative facts in the case at bar–that is, the actual uses to which the subject property was put–are not in dispute. See *Three Angels Broadcasting Network, Inc.*, 381 Ill. App. 3d at 693. The issue is whether, given the undisputed facts presented, the appellants are entitled to a charitable-use or religious-use property tax exemption. *Three Angels Broadcasting Network, Inc.*, 381 Ill. App. 3d at 693. We will reverse the decision of the Department only if that decision was clearly erroneous. See *Three Angels Broadcasting Network, Inc.*, 381 Ill. App. 3d at 693.

¶ 3 When reviewing an agency's decision for clear error, we give significant deference to the agency's experience in construing and applying the statutes that it administers. *Three Angels Broadcasting Network, Inc.*, 381 Ill. App. 3d at 693. An agency's decision will be deemed clearly erroneous only where the reviewing court, on the entire record, is left with the definite and firm conviction that a mistake has been committed. *Three Angels Broadcasting Network, Inc.*, 381 Ill. App. 3d at 693. The burden of proving the right to an exemption is on the party seeking it, and in determining whether property is included within the scope of an exemption, all the facts are to be construed and all the debatable questions resolved in favor of taxation. *Methodist Old Peoples Home v. Korzen*, 39 Ill. 2d 149, 155 (1968).

¶ 4 The appellants operate a senior housing facility comprising 133 independent-living units, 66 assisted-living units, and 32 skilled-nursing units located in Glen Carbon. They applied for charitable-use and religious-use property tax exemptions for tax years 2003 through 2006. These applications were denied by the Department on April 30, 2009. We turn first to the question of the appellants' entitlement to a property tax exemption on the basis of their "charitable use" of the property.

¶ 5 Section 6 of article IX of the Illinois Constitution permits the legislature to exempt certain property from taxation only if it is "used exclusively for *** charitable purposes." Ill. Const. 1970, art. IX, § 6. The legislature has seen fit to so exempt property "when actually and exclusively used for charitable or beneficent purposes, and not leased or otherwise used with a view to profit." 35 ILCS 200/15-65 (West 2012). The legislature has specifically included "[o]ld people's homes" if the home is exempt from federal income tax and if its bylaws provide for a waiver or reduction, based on an individual's ability to pay, of any entrance fee, assignment of assets, or fee for services. 35 ILCS 200/15-65(c) (West 2012).

¶ 6 Even if an "old people's home" meets the statutory requirements for exemption, it must also meet the constitutional requirements for charitable use. *Eden Retirement Center, Inc. v. Department of Revenue*, 213 Ill. 2d 273, 287 (2004). In *Methodist Old Peoples Home v. Korzen*, 39 Ill. 2d 149, 156-57 (1968), the supreme court articulated six guidelines or criteria that must be met in order to satisfy the constitutional requirements for a charitable use. Unless these six criteria are met, the property may be found not to be used exclusively for charitable purposes within the meaning of our constitution and therefore not entitled to an exemption from taxation. *Eden Retirement Center, Inc.*, 213 Ill. 2d at 287.

¶ 7 The six criteria articulated in *Methodist Old Peoples Home*, 39 Ill. 2d at 156-57, as restated by the supreme court in *Eden Retirement Center, Inc.*, 213 Ill. 2d at 287, for determining whether a property meets the constitutional requirement for a charitable use are as follows: (1) the benefits derived are for an indefinite number of persons for their general welfare or in some way reducing the burdens on government; (2) the organization has no capital stock or shareholders and does not profit from the enterprise; (3) funds are derived mainly from private

and public charity, and the funds are held in trust for the objects and purposes expressed in the organization's charter; (4) charity is dispensed to all who need and apply for it; (5) no obstacles are placed in the way of those seeking the benefits; and (6) the exclusive, *i.e.*, primary, use of the property is for charitable purposes. The supreme court further stated that the statements of the agents of an institution and the wording of its governing legal documents evidencing an intention to use the property exclusively for charitable purposes do not relieve the institution of the burden of proving that its property actually and factually is so used. *Methodist Old Peoples Home*, 39 Ill. 2d at 157. The court further clarified that the term "exclusively used" means the primary purpose for which the property is used and not any secondary or incidental purpose. *Methodist Old Peoples Home*, 39 Ill. 2d at 157.

¶ 8　　In its order denying the exemption, the Department found that the evidence presented at the hearing before the Department failed to establish that the appellants met the guidelines set forth in *Methodist Old Peoples Home*. The evidence did not indicate that the appellants' charity benefits an indefinite number of people, because the appellants place limits on the amount of charity given. The appellants' bylaws provide that they may deny benevolent care to any resident if that care would jeopardize the appellants' ability to meet their obligations and to continue to operate in a financially stable manner. Furthermore, any benevolent care is limited to existing residents and does not extend to those who wish to become residents. Accordingly, the appellants do not dispense charity to all who need it. Providing charitable care only to its residents, placing limits on the amount of charitable care, and giving it only to the extent the appellants speculate they have the financial ability to provide it warrants a finding that the appellants' policy does not benefit an indefinite number of people. See *Wyndemere Retirement Community v. Department of Revenue*, 274 Ill. App. 3d 455, 460-61 (1995) (charity provided in relation to financial circumstances is not provided to an indefinite number of people and not dispensed to all who need it). Nor, the Department found, did the appellants' operation lessen the burden on government any more than does a for-profit retirement facility.

¶ 9　　Additionally, the appellants failed to establish that their funds are derived mainly from private and public charity. To the contrary, the primary source of the appellants' income is from fees paid for services rendered. The Department rejected the appellants' argument that their funds came largely as donations from Lutheran Senior Services, which derives its funds mainly from private and public charity. The appellants' audited financial statements indicate that these funds received from Lutheran Senior Services were loans and not donations. Furthermore, Lutheran Senior Services is a separate entity from the appellants, and the appellants cannot acquire charitable status through the acts of a separate entity. The charitable acts of Lutheran Senior Services cannot be attributed to the appellants.

¶ 10　　The Department found that the appellants place obstacles in the way of people seeking charity from it. The rental fees it charges are substantial and the evidence did not establish that the appellants charge less than similar for-profit entities operating in the area. The appellants require large security deposits from all of their residents and any fees that are not timely paid accrue a finance charge of 10% per annum. Neither the late fee nor the security deposit has ever been waived for any resident. Renters are also required to maintain renters insurance including Lutheran Senior Services as an additional insured.

¶ 11　　Finally, the Department found that the appellants had failed to establish that the primary use of the property was charitable. In order to live in the units, residents must pay substantial monthly fees that vary depending on the size and desirability of the unit. Residents must

complete an application that shows they have the physical ability to live in the units. The security deposit and late fee have never been waived. The appellants' primary source of income is from fees rather than donations. Similar facts were found in *Methodist Old Peoples Home* to be suggestive of a noncharitable use of the property. Accordingly, the Department determined that the appellants had not met their burden of showing clearly and convincingly that they are entitled to the charitable-use property tax exemption.

¶ 12    We have carefully reviewed the record of the proceedings before the Department and conclude that its decision is not clearly erroneous. The Department's findings of fact are well supported by the evidence and, after reviewing constitutional, statutory, and case law, we are not left with the definite and firm conviction that the Department has made a mistake in its application of that law to the facts. The appellants' use of the property does not satisfy even a majority of the criteria set forth in *Methodist Old Peoples Home*, and the appellants have not established that their property is used exclusively for charitable purposes and therefore entitled to the exemption.

¶ 13    The appellants argue that the Department had previously determined that one of the appellants is exempt from retailers' occupation and use taxes on the basis that it is organized and operated exclusively for charitable purposes and that the Department cannot, therefore, deny the appellants a property tax exemption for charitable use. The appellants correctly point out that the same criteria set forth in *Methodist Old Peoples Home* for determining charitable exemptions apply equally to exemptions from both property taxes and retailers' occupation and use taxes. See *Wyndemere Retirement Community v. Department of Revenue*, 274 Ill. App. 3d 455, 459 (1995). Nevertheless, the Department held that having a charitable exemption from income taxes or from retailers' occupation and use taxes is not determinative of whether an applicant is entitled to a charitable exemption from property taxes and that, in any event, the Department may review the tax-exempt status of a corporation at any time.

¶ 14    Our supreme court has held that the fact that an applicant has been granted a charitable exemption from state retailers' occupation, service occupation, use, and service use taxes does not mean that the applicant must likewise be granted an exemption from paying tax on real property it owns. *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 389 (2010). The appellants argue that this opinion has no precedential value because it was not a majority opinion of the supreme court. The appellants are mistaken. Five justices concurred in that section of the opinion which made the above statement of law. Two of those justices dissented from other specific holdings of the court while concurring in its judgment. We find *Provena* to be not only persuasive, but precedential. Accordingly, we reject the appellants' argument that it is necessarily entitled to a charitable-use property tax exemption based on its charitable-use exemption from retailers' occupation and use taxes. The Department did not err in similarly rejecting this argument.

¶ 15    We turn now to the question of the appellants' entitlement to a property tax exemption based on their "religious use" of the property. Section 15-40 of the Property Tax Code provides that property used exclusively for religious purposes qualifies for an exemption as long as it is not used with a view to profit. 35 ILCS 200/15-40 (West 2006). Again, in this context, the term "exclusively" means the primary purpose for which the property is used. *McKenzie v. Johnson*, 98 Ill. 2d 87, 98 (1983). For purposes of this section, a religious purpose means a use of property by a religious society or body of persons as a stated place for public worship, Sunday schools, and religious instruction. *Three Angels Broadcasting Network, Inc. v. Department of*

*Revenue*, 381 Ill. App. 3d 679, 694 (2008). While this is not inclusive of everything that might be regarded as a religious use, it is illustrative of the nature of a religious use in the context of property tax exemptions. *Three Angels Broadcasting Network, Inc.*, 381 Ill. App. 3d at 695.

¶ 16    The Department held that the primary purpose of the appellants' property is to care for the elderly. While the retirement community allows members of the Lutheran Church an opportunity to act out and evangelize their religion in the context of caring for seniors, the operation of the facility is not necessary to promote their religion, because that can be accomplished through other means. Other than caring for the elderly in a faith-inspired manner, there was little evidence of actual religious activity on the property.

¶ 17    The Department's conclusion that the appellants' property is not used as a stated place for public worship, Sunday schools, or religious instruction, or anything of that nature is not clearly erroneous. To the contrary, the primary or exclusive use to which the appellants' property is put is housing for the elderly. We are reminded that when determining whether property is within the scope of an exemption, all facts are to be construed and all the debatable questions resolved in favor of taxation. *Three Angels Broadcasting Network, Inc.*, 381 Ill. App. 3d at 697. The Department's decision that the subject property is not used exclusively for religious purposes and that the appellants are not entitled to a religious-use exemption from property tax is not clearly erroneous.

¶ 18    Nevertheless, the appellants argue that the Department and this court must defer to the religious beliefs and characterization of the appellants' activities by the Lutheran Church and the appellants as exclusively for religious purposes, in accordance with the Illinois and United States Constitutions' protection of the free exercise of religion. We believe this argument is best answered by simply quoting from *Provena Covenant Medical Center v. Department of Revenue*, 384 Ill. App. 3d 734, 766-67 (2008):

> "If 'religious purpose' meant whatever one did in the name of religion, it would be an unlimited and amorphous concept. Exemption would be the rule, and taxation the exception. 'In a sense, everything a deeply devout person does has a religious purpose.' *Faith Builders*, 378 Ill. App. 3d at 1046, 882 N.E.2d at 1264. In *Fairview Haven v. Department of Revenue*, 153 Ill. App. 3d 763, 768-69, 506 N.E.2d 341, 345 (1987), we were unpersuaded by the reasoning that a nursing home had a religious purpose because taking care of the elderly was a way of 'tying preaching to action.' 'Religious purpose' within the meaning of section 15-40(a)(1) (35 ILCS ILCS 200/15-40(a)(1) (West 2002)) has to be narrower than 'Christian service,' or else 'religious purpose' would mean everything (and, therefore, nothing). In *People ex rel. McCullough v. Deutsche Gemeinde*, 249 Ill. 132, 136-37, 94 N.E. 162, 164 (1911), the supreme court stated: '[A] religious purpose means a use of such property by a religious society or body of persons as a stated place for public worship, Sunday schools[,] and religious instruction.' In *People ex rel. Carson v. Muldoon*, 306 Ill. 234, 238, 137 N.E. 863, 864 (1922), *overruled in part on other grounds by McKenzie v. Johnson*, 98 Ill. 2d 87, 100, 456 N.E.2d 73, 79 (1983), the supreme court said, with reference to the quoted passage from *Deutsche Gemeinde*: 'This was not stated as inclusive of everything that might in the future be regarded as a use for religious purposes but as illustrative of the nature of such use.' If, as *Muldoon* said, public worship, Sunday schools, and religious instruction are 'illustrative of the nature of [religious] use,' it must follow that

'religious use' has a determinable nature and that to be a religious use, the activity must somehow resemble the activities listed in *Deutsche Gemeinde*."

¶ 19    Clearly, the primary activities conducted by the appellants on their property of housing the elderly do not resemble the activities listed in *Deutsche Gemeinde*. They are not of the type intended to be exempted by the statute. While the appellants and the Lutheran Church remain free to characterize their activities on the subject property as of a religious nature, neither the Department nor this court is bound by that characterization. The Department's denial of the appellants' application for a religious-use property tax exemption is not clearly erroneous.

¶ 20    For the foregoing reasons we affirm the decision of the circuit court of Madison County and the decision of the Department of Revenue which denied the appellants' application for property tax exemptions.

¶ 21    Affirmed.